IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**STEPHEN LEWIS**                                                                                                  **PLAINTIFF**

**V.**                                                                                               **NO. 4:23-CV-187-DMB-DAS**

**WASHINGTON COUNTY,**
**MISSISSIPPI, et al.**                                                                                   **DEFENDANTS**

**OPINION AND ORDER**

After criminal charges for auto burglary and illegal use of a credit card were dismissed against him, Stephen Lewis sued Washington County, Washington County Public Defender Office, and certain County officials alleging federal and state law claims. The defendants move for judgment on the pleadings on all Lewis' claims. Because Lewis did not properly serve Weatherspoon and Rodger, because Sanders is not amenable to suit under 42 U.S.C. § 1983, because Lewis did not allege a cognizable policy of Washington County or Washington County Public Defender Office that led to an alleged constitutional violation, and because Lewis fails to sufficiently state a claim for intentional infliction of emotional distress, the defendants' motion to dismiss will be granted.

**I**
**Relevant Procedural History**

On October 11, 2023, Stephen Lewis filed a pro se amended complaint against Washington County, Mississippi; Washington County Public Defender Office; Investigator Cory Weatherspoon, in his official and individual capacity; Attorney Marvin Sanders, in his individual and official capacity; and Supervisor Patricia Rodger, in her official and individual capacity.[1] Doc.

---

[1] The amended complaint clarifies that Lewis sues Weatherspoon in his "official capacity as an investigator with Washington County Sheriff's Department;" Sanders in his "official capacity as a lawyer for Washington County Office

#28. In his amended complaint, Lewis asserts claims under the Fourth, Sixth, and Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1983; and state law. *Id*. The defendants answered the amended complaint on May 8, 2024. Doc. #33.

On June 20, 2024, the defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[2] Doc. #36. On February 28, 2025, based on the defendants' motion, the Court struck Lewis' July 8 filings in response to the motion as violative of Local Rule 7(b)(3)'s prohibition against combining a response with a counter-motion. *See* Doc. #46 at 596 ("Lewis was well aware that combining a response and counter-motion in the same document violates Local Rule 7(b)(3), since the Court advised him of such when it struck his January 24, 2024, "Motion for Summary Judgment."). Lewis did not seek leave to refile his response.

## II
## Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). "To survive a 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mandujano v. City of Pharr*, 786 Fed. App'x 434, 437 (5th Cir. 2019) (cleaned up). The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

---

of Public Defender;" and Rodger in her "official capacity as a lawyer for Washington County Office of Public Defender." Doc. #28 at 6, 7.

[2] Though the motion for judgment on the pleadings indicates it is filed pursuant to Rules 12(c), 12(b)(1), and 12(b)(6), the accompanying memorandum brief references only Rule 12(c).

to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). However, since Rule 10(c) "incorporates into the pleadings all exhibits attached thereto, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (3d ed. 2024); *see Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *2 (5th Cir. 2022) ("In our de novo review of the grant of a Rule 12(c) motion, we consider 'the contents of the pleadings, including attachments thereto.'") (quoting *Bosarge v. MS Bureau of Narcotics*, 769 F.3d 435, 440 (5th Cir. 2015)).

## III
## Factual Allegations

### A. Traffic Stop and Arrest

On November 13, 2020, Washington County Sheriff's Department received a call from Melissa Jenkins, who informed dispatch that a vehicle matching the description of the vehicle involved in the burglary of her vehicle was located at El Toro in Greenville, Mississippi. Doc. #28 at 8. No license plate number of the vehicle or a description of the suspect involved in the burglary of Jenkins' vehicle prior to November 13, 2020, was provided to the dispatcher. *Id*. The dispatch informed investigator Cory Weatherspoon of the call. *Id*. Weatherspoon called Jenkins and she told him that she was following a blue Nissan Rogue bearing Georgia tag CLN1312. *Id*. Weatherspoon "responded to the Highway 1" where he observed the blue Nissan Rogue bearing Georgia tag CLN1312 and Jenkins. *Id*. Lewis conducted a traffic stop of the blue Nissan Rouge without witnessing the driver, Stephen Lewis, commit a traffic violation. *Id*. At the time, Weatherspoon had no knowledge of who was driving the vehicle, having only received a tip that the vehicle matched the same make and model of a vehicle used in a burglary several days prior to November 13, 2020. *Id.* The vehicle responded by parking in front of Sho-Nuff Hot Tamales

3

on Highway 82 East in Greenville, Mississippi. *Id.* at 9. After the vehicle parked, Weatherspoon informed Lewis of the reason for the traffic stop—that the the vehicle fit the description of a vehicle involved in a burglary. *Id.* Lewis exited the vehicle and ran into a field behind Sho-Nuff Hot Tamale. *Id.* Lewis hid $8,000 in U.S. currency in the thicket of the field to prevent the Washington County Sheriff Deputy from stealing his money. *Id.* Weatherspoon chased and apprehended Lewis in the field. *Id.* Although handcuffed, Lewis was not placed under arrest or charged with a crime. *Id.* Weatherspoon then returned to the field and found Lewis' $8,000 hidden in the thicket. *Id.*

Without calling a tow truck to impound Lewis' vehicle, Weatherspoon returned to the vehicle and conducted an inventory search of the vehicle. *Id.* at 10. After the search, $2,000 was missing from the vehicle's glove compartment and was never recorded on the vehicle inventory form. *Id.* Weatherspoon asked Washington County Sheriff Billy Barber[3] if he wanted him to tow the vehicle;[4] Barber told Weatherspoon he needed to let "to let one of those guys (referring to his deputies) drive it up to the station" "because you are going to need to count that money."[5] *Id.* Sheriff's deputy "Willie B" drove the vehicle to the sheriff's department. *Id.* at 10, 11. In a conversation with an unknown deputy, Weatherspoon said the vehicle was "a rental vehicle" and to "let [him] take pictures of it real quick" *Id.*

After transporting Lewis to the sheriff's department and searching Lewis' vehicle, Weatherspoon placed Lewis under arrest. *Id.* Weatherspoon created a vehicle inventory form that said Greenville Police Department Officer Ladarius Mayhall Jr. had driven Lewis' vehicle to the

---

[3] Lewis told Barber that Weatherspoon had found his money. Doc. #28 at 9–10.

[4] The vehicle was parked on private property and the owner did not request the vehicle be removed from the property. Doc. #28 at 11.

[5] Barber also asked Weatherspoon what he was going to charge Lewis with and Weatherspoon said, "failure to comply." *Id.* at 10.

Sheriff's Department. *Id.* at 12.

The traffic stop, Weatherspoon's search of the field and of Lewis' vehicle, Weatherspoon's conversation with Barber, and Willie B's conversation with the unknown deputy, were recorded by bodycam video. *Id.* at 9, 10, 11.

### B. Criminal Charges

On November 17, 2020, Weatherspoon commenced the criminal case against Lewis by affidavits which omitted that a sheriff deputy had driven Lewis' vehicle to the sheriff's department and that Weatherspoon searched the vehicle.[6] *Id.* at 12. Based on Weatherspoon's affidavits, the judge found probable cause for Lewis' arrest. *Id.*

During Lewis' initial appearance on November 17, the judge set bond at $30,000 for two counts of auto burglary and one count of illegal use of a credit card. *Id.* at 13. Lewis spent ten days in jail before posting a $30,0000 bond. *Id.* Lewis requested counsel and a preliminary hearing, which the judge set for November 24, 2020. *Id.* On November 19, 2020, the judge appointed the Washington County Public Defender to represent Lewis. *Id.* At his November 24 preliminary hearing, Lewis had no counsel. *Id.*

On June 3, 2021, Assistant District Attorney Austin Frye prepared a plea deal for Lewis before Lewis was indicted. *Id.* at 14. The next day, Lewis was indicted and scheduled for arraignment. *Id.* After he was indicted, the Washington County Public Defender assigned Marvin Sanders to represent Lewis. *Id.*

On July 6, 2021, Lewis met with Sanders and signed an "Arraignment and Plea-Waiver." *Id.* On July 23, 2021, the prosecuting attorney provided the Public Defender Office a copy of the

---

[6] Weatherspoon's affidavits, which are attached to the complaint as exhibits, state that Lewis did "willfully … with intent to defraud William Mcnemar use a credit card … to obtain merchandise;" did "feloniously, break and enter, a 2019 Chevrolet pickup truck … of William Mcnemar, with the intent to steal;" and did "feloniously, break and enter, a 2018 Ford F150 pickup truck … of Randy Blalack, with the intent to steal …." Doc. #28-3 at PageID 373, 377, 380.

5

District Attorney file. *Id.*

On August 23, 2021, Investigator Anthony Cannon told Lewis he needed to come to the Public Defender Office to sign another arraignment and plea waiver form upon the prosecution being represented by Patricia Rodger. *Id.* at 15. Lewis drove from Memphis, Tennessee, to Greenville, Mississippi and signed a second arraignment and plea waiver. *Id.* While there, Lewis requested a copy of Weatherspoon's bodycam video. *Id.* In early September 2021, Cannon contacted Lewis to inform him his copy of Weatherspoon's bodycam video was available. *Id.* Lewis drove from Memphis to Greenville to the Washington County Public Defender Office to obtain the body cam video. *Id.* Before receiving the body cam video, Cannon, Sanders, and Lewis set in Sanders' office and reviewed multiple sections of the body cam video, the vehicle inventory form, and the probable cause affidavits. *Id.*

On February 25, 2022, without counsel, Lewis filed a motion to suppress evidence. *Id.* at 17. On March 28, 2022, after Lewis realized the judge would not consider documents filed by a defendant who has counsel, Lewis filed a letter to the court referencing the body cam video evidence and the vehicle inventory form to support granting him a new attorney who would file a motion to suppress. *Id.*

On September 2, 2022, the suppression hearing was held. *Id.* Before the suppression hearing, Lewis provided Sanders the document from Hernando Circuit Court showing the prosecutor had remanded its case against Lewis. *Id.* Upon discovering the charge was remanded, Frye and Sanders requested a continuance. *Id.* at 18. Sanders told the judge then that he heard about the video that day from Frye and had not received a copy of the video (but on February 23, 2024, conceded he saw and knew about Weatherspoon's body cam video). *Id.* at 19. The judge continued the suppression hearing until October 17, 2022. *Id.* at 20. Neither Sanders nor Rodgers

6

prepared any motion before then to subject the state's case to meaningful adversarial testing. *Id.* On October 11, 2022, Frye filed a motion for nolle prosequi to dismiss all the charges. *Id.* The court granted the motion to dismiss that day. *Id.*

## IV
## Analysis

The amended complaint alleges that (1) the County, the Public Defender Office, Sanders, and Rodger are liable under 42 U.S.C. § 1983 for "jointly and/or severally depriv[ing] [Lewis] of his Sixth Amendment right to effective assistance of counsel;" (2) the County and Weatherspoon "jointly and/or severally[] deprived [Lewis] of his Fourth Amendment rights;" (3) Weatherspoon violated Lewis' Fourth, Fifth, and Fourteenth Amendment rights "by falsely arresting him;" (4) Weatherspoon violated Lewis' Fourth Amendment right "by maliciously prosecuting him without probable cause;" (5) Weatherspoon violated Lewis' Fourth Amendment right "by conducting an illegal inventory search on his vehicle and unlawfully seizing it;" (6) Sanders and Rodger violated Lewis' Sixth Amendment rights "by constructively den[ying] [him] counsel;" (7) Weatherspoon, Sanders, and Rodger are liable to Lewis for intentional infliction of emotional distress; and (8) the County "is … liable under 42 U.S.C. § 1983 for 'maintaining' a practice and procedures [sic] … that deprived [Lewis] of representation at [a critical] stage of his criminal case." Doc. #23 at 22–36.

In seeking judgment on the pleadings, the defendants argue that (1) Rodger[7] and Weatherspoon were improperly served; (2) "the official capacity claims against Weatherspoon, Sanders, and Rogers must be dismissed;" (3) "Lewis's claims as to Rogers, Sanders, and the

---

[7] The amended complaint spells Patricia's last name as "Rodger" or "Rodgers" while the defendants' motion spells it as "Roger" or "Rogers." *See generally* Docs. #28, #36. Since the defendants did not request the amended complaint's caption or body be modified to reflect a different spelling of Patricia's last name, "Rodger" is used in this order unless text is quoted.

7

Washington County Public Defenders' office are … precluded by *Polk County v. Dodson*, 454 U.S. 312 (1981);" (4) "Lewis's claims against Weatherspoon are meritless as there was probable cause to stop and search his car and … to arrest him;" (5) "all individual Defendants are entitled to qualified immunity;" (6) "all claims against Washington County fail;" and (7) "the state law claim fails." Doc. #36 at 1–2 (emphasis in original).

### A. Service of Process

The defendants argue that "Weatherspoon and Rogers were not properly served and should be dismissed under Fed. R. Civ. Pr. 12(b)(5)" because "Rogers was not served in any manner described by Rule 4(e), but, instead copy of the Complaint was left with an office clerk" and "Weatherspoon … was not personally served but was served through 'Angela Sorrel.'" Doc. #37 at 7, 8.

Federal Rule of Civil Procedure 4(e) provides that service on an individual may be made by "following state law for serving a summons in an action brought in courts … in the state where the district court is located or where service is made;" "delivering a copy of the summons and of the complaint to the individual personally;" "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." "Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process was not timely made in accordance with Federal Rule of Civil Procedure 4 or was not properly served in the appropriate manner." *Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 349–50 (E.D. La. 2011) (citation omitted). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Henderson v. Republic of Tex. Biker Rally, Inc.*, 672 Fed. App'x 383, 384 (5th Cir. 2016) (quoting *Carimi v. Royal*

8

*Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).

Lewis' proof of service regarding Rodger indicates the summons was served on "office clerk, who is designated by law to accept service of process on behalf of [Rodger]" at "910 Courthouse Lane, Greenville, MS 38701" on October 16, 2023. Doc. #4 at PageID 95. Regarding Weatherspoon, Lewis' proof of service indicates the summons was served on "Angelia Sorrell, who is designated by law to accept service of process on behalf of Washington County Sheriff's Department" on April 25, 2024.[8] Doc. #30 at PageID 416.

Because Lewis' July 8 filings were stricken, there is nothing in the record by Lewis to establish the validity of service on Weatherspoon and Rodger. For that reason,[9] Weatherspoon and Rodger are dismissed[10] and the motion for judgment on the pleadings will be granted as to them. Consequently, only the County, the Public Defender's Office, and Sanders remain as defendants.

### B. Official and Individual Capacity Claims

#### 1. Official capacity claims against Sanders

The defendants argue that Lewis' claims against Sanders in his official capacity fail because he is not "a government official, [and] therefore, [he] cannot be sued in an 'official'

---

[8] No party identifies Sorrell's position in the Washington County Sheriff's Department.

[9] Even if Lewis effected personal service on Rodger and Weatherspoon, "Rule 4 has generally been construed to mean that service at a defendant's place of employment is insufficient [when he is sued in his individual capacity]." *Brown v. Lafayette City-Par. Consol. Gov't*, No. 6:13CV2436, 2014 WL 1212699 at *1 (W.D. La. Feb. 28, 2014) ) (quoting *Daley-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987)). To the extent they are sued in both their official and individual capacity, service of process at their place of employment was improper as to the individual capacity claims. *See id.* ("Service on a police department, other officers or police station staff is generally insufficient to effect service on a police officer sued in his individual capacity.").

[10] The defendants request dismissal with prejudice as to all defendants. Doc. #36 at 2. Dismissal with prejudice based on failed service of process should only be granted when there is "a clear record of delay or contumacious conduct by the plaintiff … and a lesser sanction would not better serve the interests of justice." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008).

9

capacity."  Doc. #37 at 9.

"[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted).  Accordingly, the Court will treat the Sixth Amendment claim against Sanders in his official capacity as a claim against the Public Defender Office.  *See Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("Because official capacity suits are really suits against the governmental entity, Goodman's attempt to hold Hickman liable for failing to train and supervise Ashabranner, if in his official capacity, is subsumed within her identical claim against Harris County. Thus, her § 1983 claim against Hickman must be viewed as one asserted against him in his personal capacity if it is to survive independently.").

### 2. Individual capacity claims against Sanders

The defendants argue that "Sanders … is [not] a state actor" because "a public defender does not act 'under color of state law' when representing a criminal defendant in a state criminal proceeding," and even "[i]f this Court holds that Sanders [is a] state law actor[, he] would … be entitled to qualified immunity."  Doc. #37 at 8, 9.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) "a violation of the Constitution or federal law," and (2) "that the violation was committed by someone acting under color of state law."  *La. Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 Fed. App'x 317, 319 (5th Cir. 2020).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (citations omitted).  "[S]tate employment is generally sufficient to render the defendant a state actor."  *Id.* (alteration in original).  "It is firmly established that a

defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id.* at 49–50.

### a. Color of State Law

Relying on *Polk County v. Dodson*, 454 U.S. 312 (1981), the defendants argue that because of his role as public defender, Sanders was not acting under color of state law. Doc. #37 at 9. In *Polk County*, the United States Supreme Court found that a public defender does not act under color of state law in the course of "exercising [his] independent professional judgment in a criminal proceeding" because "a defense lawyer is not … the servant of an administrative superior" and because "it is the constitutional obligation of the State to respect the professional independence of the public defenders whom it engages." 454 U.S. at 321–24. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 324. "[C]ourt-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983." *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 679 (5th Cir. 1988). However, a defense attorney may become a state actor if he actively conspires with the prosecution to secure a conviction against the criminal defendant. *Tower v. Glover*, 467 U.S. 914, 916 (1984). To support a conspiracy claim under § 1983, a plaintiff "must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted).

Though in his amended complaint, Lewis makes many bare and conclusory allegations about Sanders and his acts and omissions,[11] he alleges no facts to support a contention that Sanders

---

[11] *See, e.g.*, Doc. #28 at 33 (Sanders "intentionally failed to subject the state's case to any meaningful adversarial testing to protect, and conceal [Weatherspoon's] egregious misconduct;" "turned a blind eye" to Weatherspoon's alleged illegal inventory search and seizure; (2) "assisted the prosecutor with concealing" the search and seizure; and

11

acted in concert with the prosecution to secure his conviction. *See Edmiston v. La. Small Bus. Dev. Ctr.*, 931 F.3d 403, 406 (5th Cir. 2019) ("Although we must accept as true all factual allegations in the complaint, that presumption does not extend to legal conclusions.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because there is nothing in the amended complaint to support a theory that Sanders was acting under color of state law for purposes of liability under § 1983, judgment on the pleadings on Lewis' individual capacity claims against Sanders will be granted. As such, it is not necessary to analyze the Sixth Amendment claim against Sanders in his individual capacity and the qualified immunity argument as to him. *See Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) ("Because Asher's physical sexual abuse of Juan did not occur under color of state law, there was no state action and no violation of Juan's constitutional rights."); *see also Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

### b. Constitutional Violation

The amended complaint alleges Sanders violated Lewis' Sixth Amendment rights[12] but it does so based only on conclusory allegations and legal conclusions as to why.[13] Even if Lewis

---

failed to disclose the alleged material facts to the court for two years). Lewis' Sixth Amendment constructive denial of counsel claim is based on his conspiracy allegations against Sanders. *See, e.g.*, Doc. #28 at 22–23, 31–33.

[12] "[Section] 1983 provides the exclusive remedy for a Sixth Amendment claim against an alleged state actor," so the claim is properly characterized as one brought under § 1983 rather than one brought directly under the Sixth Amendment. *Hayes v. Wong*, No. 4:17-CV-2, 2017 WL 4228223, at *3 n.8 (N.D. Miss. Sep. 22, 2017).

[13] *See, e.g.*, Doc. #28 at 33 (Lewis's allegations that Sanders "intentionally failed to subject the state's case to any meaningful adversarial testing to protect, and conceal [Weatherspoon's] egregious misconduct, and his intentional omission of critical material information from his affidavits of probable cause that was material to probable cause," specifically through the action of "assist[ing] the prosecutor with concealing [Weatherspoon's] illegal inventory search and seizure of [his] vehicle from the court;" "[n]o reasonable competent lawyer will consider it a trial strategy to conceal an officer/investigator violation of his client constitutional right from the court;" Sanders refused to comply as he "begged [him] to disclose to the court that a sheriff deputy had driven [his] vehicle to the sheriff's department and the vehicle [was] not towed or impounded.").

12

sufficiently alleged a constitutional violation by Sanders, for the reasons above, he fails to allege facts which show Sanders acted under color of state law.

### C. Section 1983 Claims

### 1. Washington County

Regarding the County, the defendants argue "there were no constitutional violations" upon which Lewis can base his claim, and Lewis "makes no factual allegations that would show that an official policy exists which was the moving force behind any constitutional violation." Doc. #37 at 24–25 (emphasis omitted).

To sufficiently state a § 1983 claim against the County, Lewis must plead facts establishing "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986) (county may be held liable for county policy established by policy prosecutor and sheriff where prosecutor acts as final decisionmaker for county). Lewis alleges that, in conjunction with the Public Defender:

> [The] County is also liable under 42 U.S.C. § 1983 for 'maintaining' a practice and procedures pursuant to its prior statute of Mississippi Rules of Criminal Procedure 7.2 (C) that deprived [him] of representation at critical a [sic] stage of his criminal case. [The] County has delegated its constitutional duty to run indigent defense systems. [The] County provides no oversight to ensure that the county-operated systems meet the constitutional and statutory standards for adequate representation. [The] County's willful blindness towards the constitutional violation of its Public Defender's Office, constitute gross negligent and/or deliberate and conscious indifference to indigent citizens' rights including the right to effective assistance under 42 U.S.C. § 1983 and 1988, of counsel at all states of criminal proceedings. Additionally, county are held liable under 42 U.S.C. § 1983 constitutional torts that are committed pursuant to its agency failure to provide any counsel to indigent defendants at critical stages in a criminal procedure pursuant to a practice or procedure of the County. In the present case, [the Public Defender] failed to provide

13

> [him] any assistance of counsel at critical stages in his criminal case pursuant to a practice and procedure of [the] County prior Mississippi Rules of Criminal Procedure 7.2(c), contrary to the Sixth Amendment. [The] County failed to implement a policy or practice to ensure that its [Public Defender] Office provide indigent defendant counsel at all stages of a criminal case. [The] County prior Mississippi Rules of Criminal Procedure 7.2 (c) was the direct cause of [the Public Defender] depriving [Lewis] of actual counsel for his preliminary hearing, a critical stage in his criminal case, and for [Lewis'] anxiety, and severe emotional distress.

Doc. #28 at 35–36. These allegations are either conclusory, unsupported by facts, too general and vague to identify the policy Lewis challenges, or insufficient to identify any alleged policy or custom that was a moving force behind the alleged constitutional violations, or that would support the County as a policy maker. *See, e.g.*, Doc. #28 at 36 ("[Public Defender] failed to provide [him] any assistance of counsel at critical stages in his criminal case pursuant to a practice and procedure of [the] County prior Mississippi Rules of Criminal Procedure 7.2(c), contrary to the Sixth Amendment"). Accordingly, the amended complaint fails to state a constitutional claim against the County and judgment on the pleadings will be granted.

### 2. Public Defender Office

The defendants argue that the Public Defender Office "is not amenable to suit and must be dismissed" because "[s]tate law determines whether a local government entity, such as a law enforcement district, is a person capable of suit." Doc. #37 at 24 & n.196.

It is well-settled that a public defender's office is not a person capable of suit within the meaning of Section 1983. *See Mixon v. Cortello*, No. 1:15-CV-2782, 2016 WL 8717296, at *2 (W.D. La. Jan. 22, 2016) ("A public defender's office is not a person capable of being sued under 42 U.S.C. § 1983."); *Halton v. Duplantis*, No. 3:12-CV-4274, 2013 WL 1148758, at *4 (N.D. Tex. Mar. 1, 2013) ("A public defender's office is not a jural entity that can be sued under § 1983."); *Foster v. Orleans Par. Pub. Defendants Office*, No. 10-4563, 2011 WL 446031, at *2 (E.D. La. Jan. 3, 2011) ("To the extent that plaintiff is also naming the Orleans Public Defenders Office as

14

a separate defendant, that is likewise improper. It appears that office is not an entity capable of being sued under § 1983."); *Montgomery v. City of Lake Charles*, No. 2:10-1297, 2011 WL 887910, at *2 (W.D. La. Mar. 9, 2011) ("[I]t appears that the [public defender office] is not an entity capable of being sued under § 1983."). As the Court noted above, Lewis' Sixth Amendment claim against Sanders in his official capacity is imputed to the Public Defender Office. Given this, Lewis fails to state a constitutional claim against the Public Defender Office and judgment on the pleadings will be granted as to it.

### D. State Law Claim

The defendants argue Lewis' state law claim for intentional infliction of emotional distress fails because "[t]here is no allegation in the Amended Complaint which could even remotely support an intentional infliction of emotional distress claim." Doc. #37 at 28.

To state a claim for intentional infliction of emotional distress under Mississippi law, a plaintiff must show (1) "the defendant acted willfully or wantonly towards the plaintiff;" (2) the defendant's acts "evoke outrage or revulsion in civilized society;" (3) the defendant's acts "were 'directed at or intended to cause harm to' the plaintiff;" (4) the plaintiff "suffered severe emotional distress as a direct result;" and (5) "[s]uch resulting emotional distress was foreseeable." *Rainer v. Wal-Mart Assocs., Inc.*, 119 So. 3d 398, 403–04 (Miss. Ct. App. 2013) (quoting *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906–7 (Miss. 2011)).

Lewis alleges in the amended complaint:

> [Weatherspoon] willfully and wantonly, intentionally omitted material information from his probable cause affidavits and concealed his illegal inventory search and seizure of [Lewis'] vehicle from the court to justify his unlawful arrest of [Lewis], and intentionally subjected [him] to a total of 21 years in prison. [Weatherspoon] had a duty not to violate [Lewis'] constitutional rights, and not to conceal that violation to create probable cause for the arrest of [Lewis]. [Sanders] and [Rodger] willfully and wantonly, intentionally refused to provide [Lewis] any meaningful assistance of counsel and willfully and wantonly, intentionally refused to subject

15

>the state's case to any adversarial testing based on the evidence, and subjected [Lewis] to a prison term. … [Sanders'] and [Rodger's] failure to disclose the material facts to the court that [Weatherspoon] conducted an illegal inventory search and seizure of [Lewis'] vehicle to assist the prosecutor with obtaining a conviction against, and [Weatherspoon] intentionally concealing his illegal inventory search and seizure of [Lewis'] vehicle was extreme and outrageous conduct that was prejudicial to the administration of justice, intolerable, and offends all accepted standards of decency and morality.

Doc. #28 at 34–35 (cleaned up) (paragraph numbering omitted). These allegations are conclusory and even construing them in a light favorable to Lewis, they do not meet the foreseeability requirement of his emotional distress claim. *See Rainer*, 119 So. 3d at 403–04 (foreseeability of emotional distress is a necessary element of intentional infliction of emotional distress claim).[14] The defendants' motion will be granted as to Lewis' intentional infliction of emotional distress claim.

## V
## Conclusion

The motion for judgment on the pleadings [36] is **GRANTED**. A final judgment will be issued.

**SO ORDERED**, this 31st day of March, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[14] Even if Lewis alleged facts sufficient to maintain a claim of intentional infliction of emotional distress, the County and the Public Defender Office would be shielded from liability under the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-5 (Rev. 2012); *see Rimmer v. Hancock Cnty., Miss.*, No. 1:23CV198, 2024 WL 4310876 at *2 n.2 (S.D. Miss. Sept. 26, 2024).